**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

DAISCIA REDMAN,             :   Case No. 2:23-cv-0168

           : 

      Plaintiff,           :   District Judge James L. Graham

          :   Magistrate Judge Caroline H. Gentry

vs.                   : 

          : 

JEFFERSON COUNTY JAIL, *et al.*,    : 

          : 

      Defendants.         : 

---

## REPORT AND RECOMMENDATION

---

Plaintiff Redman, an Ohio inmate who is proceeding without the assistance of counsel, filed this civil rights action under 42 U.S.C. § 1983. Plaintiff contends that while she was housed at the Jefferson County Jail ("Jail") as a pretrial detainee, the Jail and two of its employees—Captain Livingston and Lieutenant Fogle—violated her constitutional rights. (Doc. No. 1.) After conducting an initial screen of the Complaint, this Court allowed Plaintiff to proceed with the following claims against Livingston and Fogle: (1) a Fourteenth Amendment claim for excessive force and/or deliberate indifference based upon the use of a restraint chair, in their individual and official capacities ("Restraint Chair Claim"); (2) a First Amendment retaliation claim, in their individual and official capacities ("Retaliation Claim"); (3) a First Amendment free speech claim, in their individual and official capacities ("Free Speech Claim"); and (4) a Fourteenth Amendment failure-to-train claim, in their official capacities only ("Failure-to-Train Claim"). (Doc. Nos. 8 & 9.)  The Court dismissed Plaintiff's remaining claims. (*Id.*)

This matter has been referred to the undersigned Magistrate Judge to issue a Report and Recommendation on Defendants' Motion for Summary Judgment (Doc. No. 34.) The Motion has been fully briefed. (Doc. Nos. 44, 45 & 46.) For the reasons set forth below, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** and that Plaintiff's claims be **DISMISSED without prejudice.**

## I.     STATEMENT OF FACTS

The following facts are taken from Defendant Fogle's Declaration ("Fogle Decl.," Doc. No. 34-1) and attached exhibits, Defendant Livingston's Declaration ("Livingston Decl.," Doc. No. 34-2) and Plaintiff's Declaration ("Plaintiff Decl.," Doc. No. 45)

Plaintiff was booked into the Jail on June 4, 2020 and was transferred out of the Jail on February 28, 2021. (Fogle Decl., Doc. No. 34-1, PageID# 163, 172.) While she was there, Plaintiff's conduct led to the issuance of fifty-nine incident reports. (*Id*. at PageID# 164.) Defendant Fogle states that during the twenty-nine years he has worked at the Jail, Plaintiff "is the worst inmate [he has] ever come across" because she "was destructive to herself, to property and, unfortunately, to staff." (*Id*. at PageID# 163.) The undersigned has summarized some of the most egregious incidents below.

On July 17, 2020, Plaintiff got into a fight with another inmate and was locked down in her cell. Two days later, she refused Officer Beckwith's order to line up for a headcount and later threatened Beckwith by stating: "You better hope I do not find you when I get out because I will hurt you." (Fogle Decl., Doc. No. 34-1, PageID# 164.)

On August 10, 2020, Plaintiff flooded her cell twice and flooded the entire top tier of F Pod. She told Officer Beckwith, who was investigating the incident: "I hope you slip

and fall." Plaintiff also attempted to flood her cell a third time and to break the fire sprinkler in her cell. Later that day, Defendants Fogle and Livingston placed Plaintiff in administrative segregation by moving her to a holding cell near the booking area, where she could be more closely monitored. (Fogle Decl., Doc. No. 34-1, PageID# 165.)

On August 11, 2020, Plaintiff stated that she had swallowed a pencil. She was examined with a body scanner and no object was found. Twenty minutes after returning to her cell, Plaintiff stated that she had swallowed a toothbrush. Again, she was examined with a body scanner and no object was found. However, Plaintiff was placed on suicide watch as a precaution. She was placed in a suicide prevention suit and Jail officials took all objects that she could harm herself with out of her cell. (Fogle Decl., Doc. No. 34-1, PageID# 165-66.)

Three hours later, Plaintiff began to injure herself by biting her arm. Specifically, she "was chewing on her left wrist and had wiped blood all over the wall." Plaintiff was placed in a restraint chair to protect herself from further injury. She was examined by medical staff every day until August 17, 2020, when the Jail's mental health provider approved her release from the restraint chair. (Fogle Decl., Doc. No. 34-1, PageID# 166.)

On August 22, 2020, Plaintiff was transferred to a mental health facility operated by Appalachian Behavioral Health ("ABH") for diagnosis and treatment of any mental health issues. Defendant Fogle describes Plaintiff's time there as follows:

> 26. Unfortunately, things did not go well at ABH. For example, Redman reported swallowing foreign objects which necessitated an emergency room visit for a scan. [See Medical Records, Exhibit B, p. 12]. Redman was "condescending, demanding, dismissive and entitled with nursing staff." (*Id.*) "Her reported symptoms changed daily, but she was never noted to be

3

responding to internal stimuli or to be legitimately paranoid or distracted." (*Id*. at p. 13). "[Plaintiff] gave conflicting information about previous suicidality, hallucinations, delusions, medication, history, etc." (*Id*.)

27.     On August 26, 2020, Redman started hitting and kicking staff at ABH which required them to put [her] in four-point restraints. (*Id*.)

28.     Ultimately, ABH believed that Redman was malingering and she was discharged from ABH on September 1, 2020. (*Id*. at p. 14). As she walked out, Redman stated, "Don't worry, I'll be back." (*Id*.)

(Fogle Decl., Doc. No. 34-1, PageID# 167.)

The day after returning from ABH, Plaintiff "viciously assaulted" Sergeant Pashke by putting her hands around her face and seemingly attempting to gouge her eyes out. Sergeant Pashke was seriously injured and was hospitalized for three days. Plaintiff was later charged with and convicted of Attempted Felonious Assault, a third-degree felony. (Fogle Decl., Doc. No. 34-1, PageID# 167; *see* Photographs of Sgt. Pashke, Doc. No. 34-1, PageID# 347-66.)

On September 4, 2020, Plaintiff told Jail staff that she was suicidal and had tried to hang herself. Her arm was also bleeding. While she was being evaluated by the Jail nurse, Plaintiff explained that she had bitten her arm while trying to find a vein. She was placed on suicide watch. (Fogle Decl., Doc. No. 34-1, PageID# 168.)

Two days later, Officer Stavorsky checked on Plaintiff and saw blood on the cell floor. He discovered that Plaintiff had bitten a hole in her arm that was between 1.5 and 2 centimeters wide. The Jail nurse asked that Plaintiff be placed in the restraint chair to prevent further self-injury and to allow her to treat the wound. Plaintiff remained in the restraint chair until September 10, 2020. (Fogle Decl., Doc. No. 34-1, PageID# 168.)

4

Plaintiff was transferred to the Belmont County Jail for two weeks in October 2020. Defendant Fogle explains that Plaintiff was transferred to Belmont County "at Jefferson County's expense, to give our staff a break." While Plaintiff was housed in Belmont County, she complained to the Bureau of Adult Detention about her treatment at the Jefferson County Jail. On October 28, 2020, the Belmont County Sheriff's Office returned Plaintiff to the Jefferson County Jail because she had damaged a television set and they would no longer agree to house her. (Fogle Decl., Doc. No. 34-1, PageID# 169.)

Immediately upon her return to the Jail, Plaintiff asked to be placed in the restraint chair so that she would not hurt herself. Officers Thomas and Beckwith did so. The next day, after returning to the restraint chair from a walking break, Plaintiff thrashed around violently and broke the restraints. Later that day, she injured her right hand, sucked blood out of the wound, and spit blood on the wall. She was taken to Trinity Medical Center for treatment. (Fogle Decl., Doc. No. 34-1, PageID# 169.)

On October 30, 2020, Plaintiff was released from Trinity Medical Center and placed back in the restraint chair, where she remained until November 30, 2020. While Plaintiff was in the restraint chair, she received all of her meals and was offered breaks to walk around, use the restroom, and take a shower. She was monitored by the nursing staff and was frequently checked on by Jail staff. (Fogle Decl., Doc. No. 34-1, PageID# 170.)

After she was released from the restraint chair, Plaintiff made a series of threats against Jail officials. On December 4, 2020, Plaintiff made an implied threat against the Jail nurse and stated that "she talked to her lawyer and it is only a misdemeanor." On December 21, 2020, Plaintiff laughed and made crude comments about a photograph of

5

Sergeant Pashke's bruised and swollen face. On December 22, 2020, Plaintiff asked another inmate where Officer Clancy lived. On January 3, 2021, Redman made the following threat against Officer Beckwith: "That's okay though because she's going to get it. I'm going to burn her house down with her and her kids in it." Defendant Fogle explains that "[t]his threat was especially concerning considering that Redman was pending trial on an arson charge." (Fogle Decl., Doc. No. 34-1, PageID# 171.)

On January 14, 2021, Plaintiff was observed wearing "head gear" that consisted of ripped towels wrapped around her head. Plaintiff refused to follow orders to take it off and slapped away Officer Beckwith's hand when she tried to remove it. Jail officials used OC spray to obtain Plaintiff's compliance. (Fogle Decl., Doc. No. 34-1, PageID# 171.)

On January 16, 2021, Plaintiff used a funnel made out of a paper bag to flood another inmate's cell with toilet water. Plaintiff also tried to flood her own cell by filling the toilet bowl with toilet paper. (Fogle Decl., Doc. No. 34-1, PageID# 172.)

Plaintiff claims that she was kept in the restraint chair during her criminal trial on February 23 and 24, 2021. Although Defendants' records are incomplete, the existing records do not show that Plaintiff was in the restraint chair after November 30, 2020, and affirmatively show that she was not placed in the restraint chair on February 24, 2021. Defendant Fogle does not recall Plaintiff being in the restraint chair between November 30, 2020 and February 28, 2021, when she was transferred to the Ohio Department of Rehabilitation and Corrections. (Fogle Decl., Doc. No. 34-1, PageID# 172.)

After she was placed in administrative segregation, Jail officials took away Plaintiff's mail and phone call privileges. Given her history of assaulting and threatening

Jail officials and her attempts to learn personal information about them, Defendant Fogle "did not want Redman to use the phone or mail to (1) send threats to staff members or their families or (2) attempt to obtain further information about staff members from persons outside the jail." However, Plaintiff did not lose her ability to contact legal counsel by mail or telephone. (Fogle Decl., Doc. No. 34-1, PageID# 173-74.)

Plaintiff never filed a grievance with the Jefferson County Jail. She also did not request a grievance form from Defendants or complain that she was unable to file a grievance. (Fogle Decl., Doc. No. 34-1, PageID# 174; Livingston Decl., Doc. No. 34-2, PageID# 1093.) In her Declaration, Plaintiff neither contests these assertions nor explains her failure to file a grievance. (Plaintiff Decl., Doc. No. 45.)

Defendants responded to the complaint that Plaintiff made to the Bureau of Adult Detention and believe that it was not substantiated. (Fogle Decl., Doc. No. 34-1, PageID# 169; Livingston Decl., Doc. No. 34-2, PageID# 1093.) Plaintiff claims that the Jail "was in fact found not in compliance with jail minimum standards and had to create a plan of action to come into compliance when it pertained to their inappropriate use of the restraint chair, suicide watch observation, etc." (Plaintiff Decl., Doc. No. 45, PageID# 1160-61.) However, Plaintiff did not submit or cite any evidence to support this assertion.

Plaintiff claims that Defendants retaliated against her for making a complaint to the Belmont County Jail and "tormented" her while she was in the restraint chair. Plaintiff also claims that Defendants are callous, ruthless, vicious, violent, and cruel, and states that she saw them "brutally beat, torment and torture" several other people. Plaintiff does not, however, describe any facts that show how Defendants tormented and

retaliated against her. (Plaintiff Decl., Doc. No. 45, PageID# 1160-61.) Defendants aver that they did not retaliate against, taunt or disparage Plaintiff at any time. (Fogle Decl., Doc. No. 34-1, PageID# 170; Livingston Decl., Doc. No. 34-2, PageID# 1092-93.)

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure permits parties to move for summary judgment on one or more claims or defenses in an action. Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no ***genuine dispute*** as to any ***material fact*** and the movant is entitled to judgment as a matter of law." *Id*. (emphasis added). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Id*.

If a party asserts that a fact cannot be disputed or, conversely, that it is genuinely disputed, then it must support its assertion with citations to evidentiary materials (e.g., depositions, documents, affidavits, declarations, stipulations, admissions or interrogatory answers). Fed. R. Civ. P. 56(c)(1)(A). A plaintiff's *pro se* status does not exempt him from his burden to provide such evidence. *Viergutz v. Lucent Techs.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, "a prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment . . . even if the record lacks corroborating evidence." *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022); *see also Coopwood v. Wayne Cnty.*, 74 F.4th 416, 423 (6th Cir. 2023) ("[I]f the assertions in [the plaintiff's] sworn affidavit are true, they would at least create a dispute of fact ….").

8

The Court is not required, however, to consider portions of affidavits or declarations that contain either inadmissible evidence or conclusions of law. Fed. R. Civ. P. 56(c)(4).

The party moving for summary judgment bears the initial burden of showing the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party meets this burden when it shows that the lack of evidence supporting an essential element of the non-moving party's case is so significant that "no reasonable jury could find for the nonmoving party." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 943 (6th Cir. 2022). However, when asserting qualified immunity at the summary-judgment stage, a defendant is relieved of the threshold burden on that issue, and the plaintiff must instead affirmatively prove that the defendant *is not* subject to qualified immunity. *Fry v. Robinson*, 678 F. App'x 313, 318 (6th Cir. 2017).

If the moving party meets its initial burden, then the non-moving party cannot rest on its pleadings, but instead must point to admissible evidence that creates a genuine issue of material fact on each element of its claims or defenses. *Anderson*, 477 U.S. at 248-50; *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993). The non-moving party must show that more than "a mere scintilla of evidence" supports each such element. *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011). If the non-moving party does not either properly support its assertions of fact or address the moving party's assertions of fact with admissible evidence, then the Court may consider the moving party's cited evidence to be undisputed. Fed. R. Civ. P. 56(e).

When ruling on a motion for summary judgment, the Court is required to draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v.*

9

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court may not make credibility judgments or weigh the evidence. *Alsbaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). It also may not substitute its own judgment for that of a jury and decide the case on the merits. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018). Instead, the Court's role is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury" at all, or whether the case "is so one-sided that the moving party must prevail as a matter of law." *Id*. (internal citations omitted).

Although the Court is only required to consider the materials cited by the parties, it may also consider other evidentiary materials in the record. Fed. R. Civ. P. 56(c)(3). But the Court "has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009).

## III.    LAW AND ANALYSIS

Defendants argue that many of Plaintiff's claims are barred by the applicable statute of limitations. Next, they argue that all of Plaintiff's claims are barred as a matter of law because she failed to exhaust her administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Finally, Defendants argue that Plaintiff's claims fail on their merits, in part because they are entitled to qualified immunity. Because the undersigned agrees that the PLRA bars Plaintiff's claims—and that dismissal is required—it is unnecessary to reach Defendants' remaining arguments. *See Blissit v. Fiquris*, 345 F. Supp. 3d 931, 937, 941 (S.D. Ohio 2018) (Graham, D.J.)

(awarding summary judgment to defendant based upon plaintiff's failure to satisfy the PLRA exhaustion requirement and declining to reach defendant's additional arguments).

The PLRA requires all prisoners (including pretrial detainees) to fully exhaust all available institutional remedies prior to filing suit in federal court. *See* 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[E]xhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

The PLRA requires "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion is necessary to provide "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009). To properly exhaust a claim, a prisoner must take advantage "of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90).

"Proper exhaustion [further] demands compliance with an agency's deadlines…." *Woodford*, 548 U.S. at 90.

The obligation to exhaust hinges on the availability of administrative remedies. *Ross v. Blake*, 578 U.S. 632, 636 (2016). There are three circumstances in which an administrative remedy, although officially available, is not capable of being used to obtain relief: (1) an administrative procedure operates as a "simple dead end," with officers unable or consistently unwilling to provide relief to aggrieved inmates; (2) an administrative scheme is so opaque that it is practically incapable of use to the ordinary prisoner; and (3) a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through "machination, misrepresentation, or intimidation." *Id*. at 642-48. To invoke one of these exceptions, Plaintiff must allege and prove that the established administrative process is "not capable of use to obtain relief" or that Defendants, or any other correctional officer or staff member, affected her ability to participate in the grievance process. *Id*.

The failure of a prisoner plaintiff to exhaust his administrative remedies is an affirmative defense that Defendants must plead and prove. *Jones*, 549 U.S. at 216. Once the defense of failure to exhaust is raised and supported, the burden of proof shifts to the Plaintiff, who must present evidence showing that she has complied with the PLRA's exhaustion requirement. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Here, Defendants have pled[1] and proven their affirmative defense of Plaintiff's failure to satisfy the PLRA exhaustion requirement. Plaintiff did not attempt to refute this evidence. It is undisputed that Plaintiff did not file, much less exhaust, any grievance with the Jefferson County Jail regarding any issue raised in her Complaint. Accordingly, there is no genuine dispute of material fact regarding Plaintiff's failure to exhaust her administrative remedies as required by the PLRA, and dismissal of Plaintiff's claims without prejudice is required. 42 U.S.C. § 1997e; *Blissit*, 345 F. Supp. 3d at 937 ("Under the PLRA, exhaustion of all available administrative remedies is a mandatory prerequisite to filing suit in federal court.").

## IV.    CONCLUSION

For the reasons stated, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. No. 34) be **GRANTED** and that Plaintiffs' claims against Defendants Fogle and Livingston be **DISMISSED without prejudice.**

**IT IS SO RECOMMENDED**.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

Procedure on Objections

If any party objects to this Report and Recommendation ("Report"), that party may, within fourteen (14) days of the date that this Report was filed, file and serve

---

[1] *See* Defendants' Answer, Doc. No. 12, PageID# 62.

written objections to specific findings or recommendations along with supporting authority for the objection(s). Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. A District Judge will then make a *de novo* determination of the portions of the report, findings, or recommendations to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, this Court's findings or recommendations, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are advised that a failure to object to the Report will result in a waiver of a party's right (1) to have the District Judge review the Report *de novo* and (2) to appeal a decision of the District Court adopting the Report. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).